2024 IL App (2d) 230389-U
No. 2-23-0389
Order filed January 2, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 23-CF-2182 |
| DAVID CONTRERAS, | ) ) | Honorable Salvatore LoPiccolo, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE MULLEN delivered the judgment of the court.
Presiding Justice McLaren and Justice Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Trial court did not err in entering an order denying defendant pretrial release.

¶ 2    Defendant, David Contreras, appeals the October 12, 2023, order of the circuit court of Kane County granting the State's petition to deny pretrial release pursuant to article 110, section 6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110 (West 2022)) [1] and ordering him detained. For the reasons set forth below, we affirm.

_____

[1]Section 110-6.1 of the Code was amended by Public Act 101-652, § 10-255 (eff. Jan. 1,

¶ 3                                    I. BACKGROUND

¶ 4      On October 12, 2023, defendant was charged with the following offenses in Kane County: (1) aggravated battery to a pregnant or handicapped person (720 ILCS 5/12-3.05(d)(2) (West 2022)), a class 3 felony; (2) domestic battery (making physical contact), enhanced based on prior convictions (720 ILCS 5/12-3.2(a)(2) (West 2022)), a class 4 felony; (3) domestic battery (causing bodily harm), enhanced based on prior convictions, (720 ILCS 5/12-3.2(a)(1) (West 2022)), a class 4 felony; and (4) interfering with the reporting of domestic violence (720 ILCS 5/12-3.5(a) (West 2022)), a class A misdemeanor.

¶ 5      The same day, the State filed a petition to deny defendant pretrial release pursuant to section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2022)) and the circuit court held a hearing on that petition. At the hearing, the State proffered a police synopsis from the instant case. The State indicated that Officer Peter Bangs of the Aurora Police Department responded to a domestic battery. Upon arrival, Bangs made contact with defendant's girlfriend, Katie Arellano, who advised him that she and defendant had gotten into a verbal argument. Defendant had been drinking earlier in the evening and "was out of control." The argument turned physical, and defendant grabbed Arellano's phone out of her hand, preventing her from calling emergency services. Arellano stated that a struggle ensued over the phone, resulting in numerous calls and hangups. Bangs verified this by checking the 911 call log. Further, Arellano advised that defendant told her that he was "going to give [her] a reason to call the cops" before striking her in the mouth with his hand. Bangs observed Arellano to have visible bleeding and swelling to the inside of her lower lip.

_____

2023), commonly known as the Pretrial Fairness Act (Act) or Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act.

Arellano was five months pregnant on the date of the incident; post-*Miranda*, defendant stated that he was aware Arellano was pregnant. Defendant denied that any physical altercation had occurred.

¶ 6    The State also proffered by way of synopsis two other reports where defendant was charged with domestic battery. People's exhibit 2 contained a synopsis from the Aurora Police Department associated with Kane County Case No. 20-CM-2887. In that matter, Officer Andrew Petry interviewed Selina Cantu-Luyando, with whom defendant has a child in common. On the date of the offense, Cantu-Luyando went to defendant's residence to pick up diapers. When she arrived, defendant was extremely intoxicated. He entered Cantu-Luyando's vehicle and began to argue with her before he grabbed her by the hair, punched her multiple times with closed fists, and pushed her head into the windshield. Cantu-Luyando reported losing consciousness twice when defendant pushed her head into the windshield and stated that when defendant pushed her head, it cracked the windshield. Petry observed Cantu-Luyando to have multiple contusions on her face and stated that her lips were extremely swollen, making it difficult for Cantu-Luyando to speak. People's exhibit 3 was a synopsis from Kane County Case No. 21-CF-1502. There, officers responded to a call after defendant grabbed the hair of his sister, Alexa Contreras, with one hand, and hit her on the top of her head two to three times with his other. Alexa stated that defendant ripped out some of her hair in the process, which officers observed at the scene. Alexa also indicated that defendant was intoxicated when the offense occurred. Alexa further stated that she was 26 weeks pregnant when the battery occurred and defendant was aware she was pregnant because the two were living together at the time and had spoken about the pregnancy.

¶ 7    The State presented an additional synopsis from Kane County Case No. 23-CF-1761, for which defendant was currently on pretrial release after having posted cash bond. According to that report, officers from the Aurora Police Department self-initiated a warrant call for service based

on defendant's failure to appear in court for case No. 21-CF-1502. Defendant was searched, and officers found on his person a loaded firearm and a clear plastic bag containing a white powdery substance that field tested positive for cocaine. Defendant did not have a FOID card at the time of his arrest, as he was barred from owning or possessing firearms based on his prior domestic violence convictions. Defendant was charged with armed violence (720 ILCS 5/33A-2 (West 2022)), unlawful use of a weapon (no FOID card) (720 ILCS 5/24-1.6 (West 2022)), and unlawful possession of a controlled substance (720 ILCS 570/402 (West 2022)). Additionally, the State proffered a non-compliance of conditions of bond report for case No. 23-CF-1761. The report, dated October 6, 2023, stated that defendant had been released from Kane County custody on September 19, 2023, on pretrial supervision level 4, but had failed to contact pretrial services since his release. The report indicated that pretrial services had called and left a voicemail for defendant instructing him to contact pretrial services.

¶ 8    After considering the State's exhibits and the arguments of counsel, the trial court entered a written order of pretrial detention. In reaching its decision, the court carefully considered the factors for determining dangerousness set forth in the Act. See 725 ILCS 5/110-6.1(g) (West 2022). The court noted that defendant had two prior domestic batteries, which it deemed a history of violence or abusive behavior by defendant. The court also observed that at the time of the instant offense, defendant was on pretrial release or conditions of bond in case No. 23-CF-1761. Further, it found that defendant posed a real and present threat to Arellano and that the police synopsis provided clear and convincing evidence that the proof was evident that the offense was committed by defendant. The court found it relevant that the observations by officers corroborated Arellano's account of the incident. The injuries observed were "more than just her word." Finally, the court found that the State met its burden in proving that no condition or combination of conditions would

mitigate the real and present threat posed by defendant if he were to be granted pretrial release. The court based that in part on the fact that defendant had been given conditions of pretrial release in case No. 23-CF-1761 with which he had not complied, noting the "20-plus days" in which defendant had not even contacted pretrial services as ordered. The court also found that defendant demonstrated an inability to follow court rules based on his charges in case No. 23-CF-1761, as defendant had a firearm, which he was not legally allowed to possess. Finally, the court found that the only potential pretrial condition it could order would be electronic home monitoring, but rejected it "based on his history of noncompliance." Defendant timely appeals.

¶ 9                                    II. ANALYSIS

¶ 10    In his Notice of Appeal, defendant argues that the State failed to meet its burden of proving by clear and convincing evidence that the proof was evident or the presumption great that he committed the offenses charged, that the State failed to prove by clear and convincing evidence that he poses a real and present threat to the safety of any person or persons or the community, that the State failed to prove by clear and convincing evidence that no condition or combination of conditions would mitigate this threat, and that he was denied an opportunity for a fair hearing. We affirm.

¶ 11    Under the Act, a trial court may deny a defendant pretrial release if the State proves by clear and convincing evidence, that (1)the proof is evident or the presumption great that a defendant has committed a qualifying offense; (2) the defendant constitutes a real and present threat to the safety of any person or the community (or, not pertinent here, a flight risk); and (3) no less restrictive conditions would mitigate that risk. 720 ILCS 5/110-6.1(e) (West 2022). Decisions on such matters "must be individualized, and no single factor or standard may be used exclusively to order detention." 725 ILCS 5/110-6.1(f)(7) (West 2022). We review the trial court's factual

findings—including whether the defendant poses a threat and whether any conditions would mitigate that threat—using the manifest-weight standard of review. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. A finding is contrary to the manifest weight of the evidence only if an opposite conclusion is clearly apparent. *In re Marriage of Kavchak*, 2018 IL App (2d) 170853, ¶ 65. The ultimate question of whether a defendant should be detained is reviewed for an abuse of discretion; thus, we will reverse only if no reasonable person could agree with the trial court. *Trottier*, 2023 IL App (2d) 230317, ¶ 13. Moreover, it is well established that we review the result at which the trial court arrived rather than its reasoning and may affirm on any basis apparent in the record. *People v. Johnson*, 208 Ill. 2d 118, 128 (2003); *People v. Munz*, 2021 IL App (2d) 180873, ¶ 27.

¶ 12   Defendant first argues that the State failed to prove by clear and convincing evidence that the proof is evident or the presumption great that he committed the offenses charged. In support, defendant contends that the State failed to meet its burden because it indicated that victim was contacted by police regarding the hearing rather than the State's Attorney's office. However, this has no merit. Section 110-6.1(m)(1) provides that "crime victims shall be given notice by the State's Attorney's office of [the detention] hearing as required in paragraph (1) of subsection (b) of Section 4.5 of the Rights of Crime Victims and Witnesses Act [725 ILCS 120/4.5(b) (West 2022)]." 725 ILCS 5/110-6.1(m)(1) (West 2022). However, this clause "was adopted with only one focus, victims." *Rowe v. Raoul*, 2023 IL 129248, ¶ 41. "Nothing in [the Rights of Crime Victims and Witnesses] Act shall create a basis *** or a ground for relief requested by the defendant in any criminal case." 725 ILCS 120/9 (West 2022). Therefore, defendant's arguments that he was deprived of a fair hearing and that the State failed to meet its burden of proof on the grounds that it may not have contacted Arellano prior to the hearing are unavailing.

¶ 13    Defendant further argues that the State failed to prove by clear and convincing evidence that he committed the offenses charged because the State presented synopses from the instant case and defendant's other cases rather than presenting live testimony. He posits the same argument for his belief that the State failed to prove by clear and convincing evidence that he poses a real and present threat to the safety of any person or persons or the community. These arguments are also without merit. The Act plainly states that the State "may present evidence at the hearing by way of proffer based on reliable information." 725 ILCS 5/110-6.1(f)(2) (West 2022). See also *People v. Robinson*, 2023 IL App (2d) 230345-U (providing that the State was not required to present any testimony to support its petition); *People v. Mendoza-Camargo*, 2023 IL App (2d) 230330-U, ¶ 18 ("we decline to require the State to present any more evidence than required by the Act"). We note that the synopsis from the instant matter contained the reporting officer's corroboration of physical injury to Arellano. Two of the other three synopses were for cases in which defendant had pleaded guilty for domestic battery. Accordingly, it was not against the manifest weight of the evidence for the trial court to find that the proof was evident or the presumption great that defendant committed the offenses charged and that defendant posed a real and present threat to Arellano based on the synopses presented by the State.

¶ 14    Finally, defendant argues that the court erred in finding that the State proved by clear and convincing evidence that no condition or combination of conditions would mitigate the real and present threat posed by his pretrial release. He suggests that electronic monitoring and a condition that he refrain from the use or possession of alcohol and intoxicating substances would mitigate any threat posed. But, as the trial court observed, defendant was already on pretrial release with bond conditions when the instant offense occurred and had not been compliant. And the trial court had concerns regarding defendant's history of violence and demonstrated inability to cooperate

with conditions of probation and the law. Based on this record, the decision that nothing would mitigate the threat is hardly against the manifest weight of the evidence. Accordingly, we conclude that the court did not abuse its discretion in denying defendant pretrial release.

¶ 15                                III. CONCLUSION

¶ 16    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 17    Affirmed.